## UNITED STATES

v.

**Ralph C. JAMES, 184 52 0434, Private (E–1), U. S. Marine Corps.**

**NMCM 81 2719.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 19 Sept. 1980.

Decided 26 Feb. 1982.

LT Thomas P. Murphy, JAGC, USNR, Appellate Defense Counsel.

MAJ Charles Wm. Dorman, USMC, Appellate Government Counsel.

Before SANDERS, Senior Judge, and KERCHEVAL and MALONE, JJ.

MALONE, Judge:

Contrary to his pleas, appellant was convicted at special court-martial proceedings convened by the Commanding Officer, Second Battalion, Eighth Marines, of the offense of attempted damage to an automobile belonging to one Second Lieutenant W by pouring sugar into the vehicle's gas tank, in violation of Article 80, Uniform Code of Military Justice (UCMJ) 10 U.S.C. § 880. He was acquitted of an unrelated offense when the fruits of a search of both his person and his wall locker conducted by Second Lieutenant W were suppressed at trial upon the motion of the trial defense counsel. Appellant was sentenced on 19 September 1980 to a bad-conduct discharge, confinement at hard labor for three months, and forfeitures of $150.00 per month for six months. Initial action on review was taken by the Commanding General, Second Marine Division, located at Camp Lejeune, North Carolina, as an officer exercising general court-martial jurisdiction, pursuant to a request of the convening authority dated 20 January 1981. The request cited both paragraph 84c, *Manual for Courts-Martial, 1969 (Rev.)* and *United States v. Walker,* 7 M.J. 976 (N.C.M.R.1979) as authority.

Appellate defense counsel assigns two errors, the second of which summarily challenges the sufficiency of the evidence proving appellant's guilt in the absence of any evidence regarding the capability of sugar introduced into an automobile's gas tank to cause damage. Suffice it to say that the unrebutted evidence of appellant's own intention and belief that by his actions he had inflicted damage to the vehicle in question provided the requisite proof of his guilt beyond a reasonable doubt. Of greater moment is appellant's attack of the procedure whereby the convening authority herein relinquished his review responsibilities to the supervisory authority, in accordance with paragraph 84c, MCM.

That paragraph provides for review and action to be exercised in accordance with Article 60, UCMJ, 10 U.S.C. § 860, by any general court-martial authority when "it is impracticable for the person who convened the court ... to take initial action upon a record of trial ...." It further provides that the convening authority should forward the record, ordinarily through the chain of command, to the general court-martial authority by letter of transmittal with a statement of the reasons for the failure to act on the record.

Appellant now cites as error the failure of the general court-martial authority to append that letter of transmittal to the record of trial when, in accordance with Article 65(b), UCMJ, 10 U.S.C. § 865(b), the record was forwarded to the Judge Advocate General of the Navy for review by this Court. Citing paragraph 82b, MCM, as the

authority for this requirement, appellant reasons that without the attachment of the letter this Court and other review authorities cannot properly determine the impracticability of the convening authority taking his action on the record. For two diverse but mutually supporting reasons, appellant's argument fails to convince this Court. that prejudicial error has been committed requiring our remand of this record to the convening authority for his action.

■ Neither paragraph 82*b* nor paragraph 84*c*, MCM, requires attachment of the transmittal letter to the record. The former delineates the contents which shall comprise each record and the several and diverse matters and documents required to be a part of or appended to the record of the proceedings. The convening authority's request to a general court-martial authority that he take initial action on the record is not one of these matters or documents discussed requiring appendage. Regarding the letter of transmittal, the latter paragraph merely suggests "[f]or purposes of regularity, the record should be forwarded by a letter of transmittal ...." Thus, there is no requirement that the letter itself be appended to the record nor will such a requirement now be extrapolated by this Court from the Manual so long as there is no duplication of those conditions which proved fatal to the initial action taken in *United States v. Walker, supra.*

In *Walker,* the record was totally devoid of evidence of a request by the convening authority that the supervisory authority take the initial action due to the convening authority's deployment. For that reason and the prejudice resulting from the supervisory authority's usurpation of the convening authority's review prerogative, thereby delimiting the clemency considerations flowing from the recommendation of the accused's company commander that the accused be returned to duty and by the military judge to the convening authority that the punitive discharge be suspended, this Court set aside the action. Such a result is not required here in the face of ample evidence of compliance with the Manual provisions.

■ In this instance, the staff judge advocate, in his review, specifically refers the supervisory authority to the convening authority's letter request. Going beyond a mere citation to the letter, the staff judge advocate included, as well, a summarization of the paragraph 84*c* provisions so as to apprise the supervisory authority of his authority to take the initial action in place of his subordinate commander under the circumstances of this case. It was further noted that the convening authority was still deployed at the time of the review with his unit to the Mediterranean. Additionally, the action itself stated it was being taken "[i]n accordance with paragraph 84*c*, MCM, 1969 (Rev.) ... and at the Convening Authority's request." (SJA's Review at 1).

After this issue was raised for the first time on appeal to this Court by appellate defense counsel, a copy of the letter of transmittal was obtained and, upon motion of appellate Government counsel, filed with the record. Certainly, had the document been appended to the record from the outset, the review before this Court would have been foreshortened. Indeed, it may well have obviated the entire issue, as we believe it does. Nevertheless, appellant's argument that the letter must be appended to the record is subsumed by his argument that convening authority has failed to demonstrate why it was impractible for him to exercise his Article 60, UCMJ, review and action responsibilities. We therefore deem it prudent to address this latter argument.

It is appellant's belief that the convening authority, by allegedly failing to demonstrate the impracticability of his taking the initial action in this case, thereby has deprived this Court of its ability to properly determine whether it was impracticable indeed. Although unstated by appellate defense counsel, this argument impliedly flows from the faulty premise that Article 60, UCMJ, mandates the Commanding Officer, Second Battalion, Eighth Marines, to take that initial action.

■ The Manual for Courts-Martial has delineated, of course, other circumstances

besides impracticability when someone may take initial action on a court-martial proceeding other than the person who normally would. Such circumstances, for example, include the disqualification of the convening authority by his grant of immunity to a witness for the prosecution or when a member of a court-martial which tried the accused subsequently becomes the commanding officer for the time being or the successor in command. Paragraph 84c, MCM. We do not mean to infer appellate defense counsel disputes the legality of such other circumstances. We do mean to point out, however, that it was not Congress' intention that every court-martial adjudging a bad conduct discharge convened by an officer not exercising general court-martial authority must receive a minimum of two reviews before reaching this level or that all courts-martial receive the same review. *Hearings on H.R. 2498 Before Subcommittee No. 1 of the House Committee on Armed Services*, 81st Cong., 1st Sess. 1176 (April 1, 1949). (Hereinafter cited as *H.R. Hearings*).

To the contrary, the legislative history of the Uniform Code of Military Justice, 10 U.S.C. §§ 801–940 (1976), first enacted 5 May 1950, as well as the precursive Congressional reports, hearings, and debates of 1946–1948 on twelve separate bills dealing with the military justice systems of the armed services, none of which became law but died with the 80th Congress, are rife with the testimony, statements, and editorial comment of those opposed to permitting the commanding officer even to continue to exercise those review and action responsibilities he then enjoyed under the Articles for the Government of the Navy,[1] Naval Courts and Boards, 1937, and the Articles of

War.[2] It was the chief recommendation of these numerous organizations and individuals that in order to defuse the disrepute in which the military justice system was held that "command control" had to be removed from the system.

Had these recommendations been codified, no review or action responsibilities whatsoever, whether mandatory or discretionary, would have been permitted of convening authorities. Indeed, the commander would have been removed from even his functions of convening courts-martial, leaving responsibilities for nearly the entire military justice system to judge advocates and superior commands. H.R.Rep.No. 491, 81st Cong., 1st Sess. 8 (1949). (Hereinafter cited as H.R.Rep.). Persuasive, instead, was the testimony of such notable Army commanders as General Dwight D. Eisenhower,[3] and Lieutenant General J. Lawton Collins[4] in convincing Congress of the wisdom of leaving these responsibilities within the discretion of the commanding officer.

Article 60, UCMJ, states:

After a trial by court-martial the record shall be forwarded to the convening authority, and action thereon *may* be taken by the person who convened the court, a commissioned officer commanding for the time being, a successor in command, or any officer exercising general court-martial jurisdiction. (Emphasis added).

■ It is significant to note that by Congress' use of both the imperative "shall" and the permissive "may", it has distinguished its requirements for the inital review and action. It requires the record of trial to be provided to the convening authority where he, in his discretion, may take that action permitted by Article 64, UCMJ, 10 U.S.C. § 864. Who may take that initial

---

1. R.S., sec. 1624, as amended; sec. 2, act of June 22, 1874 (18 Stat. 192); act of March 3, 1893 (27 Stat. 715, 716); act of January 25, 1895 (28 Stat. 639), as amended; secs. 1–12, 16–17, act of February 16, 1909 (35 Stat. 621); act of August 29, 1916 (39 Stat. 556, 586); act of October 6, 1917 (40 Stat. 393), as amended; act of April 2, 1918 (40 Stat. 501).

2. Sec. 1. ch. II, act of June 4, 1920 (41 Stat. 787), as amended.

3. *Hearings on H.R. 2964, 3417, 3735, 1544, 2993, 2575 Before the House Committee on Armed Services*, 80th Cong., 1st Sess., 4423–4428 (July 15, 1947).

4. *Hearings on H.R. 2575 Before Subcommittee No. 11, Legal, of the House Committee on Armed Services*, 80th Cong., 1st Sess., 2153–2161 (April 14, 1947).

action was not mandated, however. *H.R. Hearings* at 1266. On reporting the bill out of committee to the full Senate, Senator Estes Kefauver (Dem., Tenn.) noted only the permissive nature of Article 60. ESTABLISHING A UNIFORM CODE OF MILITARY JUSTICE, S.Rep.No. 486, 81st Cong., 1st Sess. 26 (1949). No fatal error has been committed therefore where, as here, the convening authority in his discretion chooses not to take the initial action on the record due to the vicissitudes of command.

Of special influence with Congress was the testimony of Lieutenant General Collins in relating his experiences and views derived as the Army's commanding general of its Twenty-fifth Infantry Division during the Guadalcanal and New Georgia campaigns and the Seventh Army Corps from Normandy to the Elbe. It was his arguments in 1947 which nearly two years later provided the House Armed Services Committee the foundation for its approval of the principle that a military commander of necessity must be left with that degree of control of military justice that became codified with the Uniform Code, with key elements of that control derived from its discretionary and flexible nature. Emphasizing the importance of the latter, Representative Overton Brooks (Dem., La.) paraphrased General Collins' testimony:

> We cannot escape the fact that the law which we are now writing will be as applicable and must be as workable in time of war as in time of peace, and, regardless of any desires which may stem from an idealistic conception of justice, we must avoid the enactment of provisions which will unduly restrict those who are responsible for the conduct of our military operations. Our conclusions in this respect are contrary to the recommendations of numerous capable and respected witnesses who testified before our committee, but the responsibility for the choice was a matter which had to be resolved according to the dictates of our own conscience and judgment.

H.R.Rep. at 8.

■ For us now to sit in judgment of the impractibility of the convening authority taking his action on the eve of his impending deployment when there is sufficient evidence of record of his having exercised his discretion, having submitted his request to proper authority and in sufficient detail for that authority to act on his request, and that authority then having considered and acted favorably upon the request would be just such an unwarranted restriction upon the exercise of command and military operations that Congress declined to take in 1950.

Accordingly, the findings and sentence as approved on review below are affirmed.

Senior Judge SANDERS and Judge KERCHEVAL concur.